JOHNILE L. DUBOIS

v.

COMMONWEALTH OF VIRGINIA

Record No. 930129

September 17, 1993

Present: All the Justices

*James E. Short; J. Wayne Sprinkle* for appellant.

*Kathleen B. Martin, Assistant Attorney General (Stephen D. Rosenthal, Attorney General,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

Johnile L. Dubois pled guilty to a series of criminal indictments including capital murder. Pursuant to a plea agreement, the Commonwealth did not seek the death penalty. At the sentencing hearing, the trial court sentenced Dubois to death, finding that he would remain a continuing threat to society. In this appeal, we consider whether the evidence was sufficient to support that finding. We also review the imposition of the death penalty, as required by Code § 17-110.1.

## I.

On November 20, 1991, Dubois and three other men entered a convenience store in Portsmouth. Three store employees were in the store. Shari Watson was working near the rear of the store. Philip C. Council and Angela Garcia were working as cashiers in the front. As Dubois and his companions entered the store, Dubois, the only man armed with a gun, fired in Watson's direction, barely missing her head.

One of the men ordered Garcia and Council to open the cash registers. When Council, frightened and suffering from mental and neurological difficulties stemming from an automobile accident, could not open the register quickly, three of the robbers jumped over the counter and began to beat him. Dubois then shot Council in the chest at point blank range. The register was opened and Dubois took approximately $400 in cash and fled with his accomplices. Council died from the gunshot wound.

## II.

Dubois was indicted on charges of capital murder, robbery, use of a firearm while committing capital murder, use of a firearm while committing a robbery, attempted murder, and use of a firearm while attempting to commit murder. Code §§ 18.2-31(4); 18.2-53.1; 18.2-58; 18.2-25. Dubois entered into a plea agreement with the Commonwealth. Under its terms, Dubois agreed to plead guilty to all charges and to cooperate fully in the prosecution of his co-defendants' cases. In exchange, the Commonwealth agreed not to seek the death penalty in his case.

At his arraignment on August 4, 1992, Dubois, represented by counsel, entered guilty pleas to all the charges, including the capital murder count. At the hearing, Dubois, under oath and in response to the trial judge's questions, stated that he understood the charges against him, the plea agreement, and the possible consequences of his pleas. Dubois also stated that he understood that the maximum sentence for the capital murder was death and that the trial court was not bound by the plea agreement and could impose a death sentence.

After the Commonwealth summarized the evidence it would have presented at trial, Dubois reaffirmed his guilty pleas. The court found that Dubois had entered the pleas knowingly, intelligently,

and voluntarily and that the evidence supported those pleas of guilty. The court then ordered a presentence report.

At the sentencing hearing, Dubois stated that he had read and understood the presentence report. In response to the court's inquiries, Dubois indicated that he did not wish to question the probation officer who prepared the report nor did he wish to present any mitigating evidence. The court proceeded to hear argument from counsel. Dubois's counsel argued that the court should not impose the death penalty because the record before the court did not support imposition of the death penalty, that Dubois had expressed remorse, and that he had cooperated with the police as required under the plea agreement. The Commonwealth acknowledged that, pursuant to the terms of the plea agreement, it was not asking for the death penalty, but urged the court to impose the maximum sentence possible consistent with the agreement.

The trial court, after considering the record before it, sentenced Dubois to death for the capital murder of Philip Council. The judge found that Dubois presented a continuing serious future threat to society.

Dubois's appeal challenges the trial court's imposition of the death penalty, arguing that the evidence did not support the court's finding of future dangerousness.[1] Dubois also argues that the trial court imposed the death penalty under the influence of passion, prejudice, or other arbitrary factor, and that the sentence was excessive and disproportionate to the penalty imposed in similar crimes, considering both the crime and the defendant. We consider his appeal combined with the automatic review of the death sentence, as required by Code § 17-110.1.

## III.

Code § 19.2-264.4(C) provides in part:

The penalty of death shall not be imposed unless the Commonwealth shall prove beyond a reasonable doubt that there is a

---

[1] Dubois's second assignment of error is an argument that the record does not support a finding of vileness and that this Court should not base the imposition of the death sentence on that ground. His fifth assignment of error challenged the constitutionality of the vileness predicate for imposition of the death penalty. Since neither the holding of the trial court nor the decision of this Court is based on the vileness predicate, we need not consider these assignments of error.

probability based upon the evidence of the prior history of the defendant or of the circumstances surrounding the commission of the offense of which he is accused that he would commit criminal acts of violence that would constitute a continuing serious threat to society . . . .

Dubois had previous convictions for grand larceny, assault, and possession of a firearm after conviction of a felony, as well as two probation violations. He argues that this criminal record was the sole basis for the trial court's decision and that it does not support a finding of future dangerousness. Specifically, Dubois asserts that his convictions consisted of only one crime of physical violence, a misdemeanor assault, and that his probation revocations were not predicated on violent acts. His prior convictions, he asserts, do not evidence any pattern of aggression, bellicosity, or violence. Furthermore, Dubois asserts that the Commonwealth's agreement not to seek the death penalty evidences its belief that he is not a future danger to society. These factors coupled with his remorse, do not, he urges, support the finding of the future dangerousness predicate for the imposition of the death penalty. We disagree.

While Dubois's prior criminal convictions may not be extensive, they do not stand alone as evidence of his prior history and his tendency to resort to violence. In addition to the presentence report, the trial court had before it the victim's autopsy and toxicology reports, the evidence of the crimes with which the defendant was charged, and the forensic evaluation regarding Dubois's competency to stand trial and his mental status at the time of the offense.

These documents, admitted without objection, reveal Dubois's prior activities in closer detail. Dubois told the probation officer that he had returned to Virginia in 1986 because of his involvement in an attempted murder in Boston. In November 1986 he was convicted of grand larceny and given a two-year suspended sentence. His probation was revoked twice and, while on probation a third time, he was arrested on charges of assault, robbery, attempted robbery, and use of a firearm during the commission of a robbery. The latter three charges were *nolle prossed*, and Dubois was convicted only on a misdemeanor assault charge.

Just one year prior to the commission of the robbery and capital murder in this case, Dubois was sentenced to two years incarceration for possession of a firearm after conviction of a felony. At the

time he killed Council, he was free on mandatory parole. Furthermore, Dubois told the probation officer preparing the presentence report that, at the time of his arrest for Council's murder, he made his living by selling drugs, earning up to $2,500 a month.

In the forensic report, the examining doctor stated that Dubois had increasingly turned to antisocial and asocial activities and noted Dubois's tendency toward aggressiveness and excitability. The doctor stated that Dubois was not likely to be amenable to counseling or treatment and concluded that Dubois would continue to be a "danger to others by virtue of his way of life."

The circumstances of the present crime show that Dubois was the ringleader who planned the robbery. He was the only one of the four perpetrators who had a gun. He used that gun to shoot at one employee of the store and then apparently executed Council simply because he was unable to open a cash register drawer quickly enough.

At the sentencing hearing, Dubois neither questioned the probation officer who made the presentence report nor offered any objection to the report. Nor did he present any evidence of mitigating circumstances. The record before the court and Dubois's own admissions, most notably, that he had participated in an attempted murder and that he supported himself by selling illegal drugs, reflected a way of life that was not only illegal, but often was violent. He engaged in criminal activity as if it were a commercial enterprise.

While the Commonwealth's agreement not to seek the death penalty was a factor that the trial court was obliged to consider in determining Dubois's sentence, there is no dispute that the trial court was in no way bound to accept the Commonwealth's recommendation. Rule 3A:8; *Johnson v. Commonwealth*, 214 Va. 515, 518, 201 S.E.2d 594, 596-97 (1974). It is clear that the Commonwealth was compelled to honor the terms of its agreement not to ask the trial court to impose the death penalty. Contrary to Dubois's argument, however, the plea agreement does not bar the Commonwealth on appeal from presenting its evaluation and conclusions regarding the sufficiency of the evidence to support the trial court's decision. Furthermore, the issue before us is whether the record supports the trial court's determination, not the sufficiency of the Commonwealth's arguments.

■ Upon consideration of the entire record, we find that the trial court's finding of future dangerousness was supported by the evidence before it.[2]

## IV.

Under Code § 17-110.1(C), this Court must determine whether the death sentence was imposed "under the influence of passion, prejudice or any other arbitrary factor," and whether the death penalty "is excessive or disproportionate to the penalty imposed in similar crimes, considering both the crime and the defendant." We consider these issues in order.

## A.

Dubois argues that statements made by the trial judge at the sentencing hearing show that the death penalty was imposed under the influence of passion, prejudice, or other arbitrary factor and, therefore, this Court must reverse the sentence. He bases this argument primarily on the following statements by the trial court:

> I must say to you, young man, the crime you committed . . . is one of the worst crimes I have ever seen in my life. . . . You are twenty-six years of age, and you have nine children already, not supporting a one.

Dubois asserts that these statements, particularly the statement about the number of his children, show "high emotion," passion, or

---

[2] Dubois also states that

> for this sentence to be upheld based on its circumstances would violate due process of law guarantees, both State and Federal Constitutional due process guarantees, the equal protection guarantee of the Fourteenth Amendment to the United States Constitution, and State and Federal Constitutional guarantees against "cruel and unusual punishments [sic]", particularly the Eighth Amendment to the United States Constitution.

However, he presents no argument on these propositions and, consequently, we will not address them. *Quintana v. Commonwealth*, 224 Va. 127, 134 n.1, 295 S.E.2d 643, 645 n.1 (1982). Furthermore, although this statement implies an argument based on "manifest injustice," Dubois did not seek leave of court to withdraw his guilty plea as allowed by Code § 19.2-296 (to correct manifest injustice, trial court within 21 days after final order may set aside conviction and permit defendant to withdraw guilty plea).

prejudice, and reflect consideration of the type of arbitrary factors upon which the trial court could not properly impose the death penalty. He contends that these statements clearly were prejudicial. We disagree.

■ Our review of the judge's statements shows that they were made in the context of reciting factors in Dubois's background, including his age, his children, and the various parts of his criminal record. As the trial court judge imposed sentence, he specifically stated that he did so "after consideration of [Dubois's] past criminal history and record with respect to convictions . . . ." The record before the judge contained ample evidence to support the finding, apart from any comment on the number, and nonsupport, of Dubois's children. Accordingly, we find that the trial court did not impose the death sentence based on passion, prejudice, or any other arbitrary factor. Code § 17-110.1(C)(1).

### B.

Dubois argues that imposition of the death penalty in this case is excessive and disproportionate because he does not have a substantial criminal record, his prior criminal convictions involved only a single conviction for violent behavior, he pled guilty to these offenses, he expressed remorse for the murder, and the Commonwealth did not seek the death penalty.

■ As discussed above, Dubois's prior criminal record evidenced a pattern of continuing criminal activity. Philip Council's murder occurred while Dubois was on mandatory parole. The circumstances of the murder, while not used as a predicate for a finding of vileness, certainly reflected Dubois's disregard for human life. Dubois shot Council at point blank range, after Dubois's accomplices had beaten Council because of his inability to respond quickly to their demands. Further, Dubois murdered Council, notwithstanding the fact that Council had not resisted or attempted to impede the robbery.

We have reviewed capital murder cases with robbery as the underlying felony in which the death penalty was imposed based solely on a finding of future dangerousness. *See, e.g., Yeatts v. Commonwealth*, 242 Va. 121, 410 S.E.2d 254 (1991), *cert. denied*, ___ U.S. ___, 112 S.Ct. 1500 (1992); *Saunders v. Commonwealth*, 242 Va. 107, 406 S.E.2d 39, *cert. denied*, ___ U.S. ___, 112 S.Ct. 386 (1991); *Mackall v. Commonwealth*, 236 Va. 240, 372 S.E.2d

759 (1988), *cert. denied*, 492 U.S. 925 (1989); *Townes v. Commonwealth*, 234 Va. 307, 362 S.E.2d 650 (1987), *cert. denied*, 485 U.S. 971 (1988); *Williams v. Commonwealth*, 234 Va. 168, 360 S.E.2d 361 (1987), *cert. denied*, 484 U.S. 1020 (1988); *Pope v. Commonwealth*, 234 Va. 114, 360 S.E.2d 352 (1987), *cert. denied*, 485 U.S. 1015 (1988). We also have reviewed those cases involving capital murder during robbery in which a life sentence was imposed. *See, e.g., Copeland v. Commonwealth*, 13 Va. App. 450, 412 S.E.2d 468, *appeal denied*, No. 911149 (Va. Oct. 4, 1991); *Bowling v. Commonwealth*, 12 Va. App. 166, 403 S.E.2d 375, *appeal denied*, No. 910968 (Va. Aug. 8, 1991); *Fine v. Commonwealth, appeal denied*, No. 1087-90-2 (Va. Ct. App. Nov. 8, 1990), *appeal denied*, No. 901609 (Va. Mar. 8, 1991).

■ Based on this review, we find that sentencing bodies in Virginia generally have imposed the death penalty in circumstances substantially similar to those presented in this case. Accordingly, we hold that the death penalty, as imposed here, is neither excessive nor disproportionate.

## VII.

We find no reversible error in the issues raised by Dubois's appeal. Having conducted the review mandated by Code § 17-110.1, we decline to commute the sentence of death. Accordingly, we will affirm the judgment entered by the trial court.

*Affirmed.*