UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

JOHNILE L. DUBOIS,
Petitioner-Appellant,

v.

No. 97-21

FRED W. GREENE, Warden,
Mecklenburg Correctional Center,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1132-AM)

Argued: March 2, 1998

Decided: May 26, 1998

Before WILKINS, LUTTIG, and MOTZ, Circuit Judges.

_____

Dismissed by unpublished per curiam opinion.

_____

COUNSEL

**ARGUED:** Joseph N. Bowman, Alexandria, Virginia; Mark Evan
Olive, VIRGINIA CAPITAL REPRESENTATION RESOURCE
CENTER, Richmond, Virginia, for Appellant. Pamela Anne Rumpz,
Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** Robert Lee,
VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER,
Richmond, Virginia; Joseph J. McCarthy, DELANEY, MCCARTHY,

COLTON & BOTZIN, P.C., Alexandria, Virginia, for Appellant. Richard Cullen, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner Johnile Dubois, who pled guilty to capital murder and was sentenced to death in the Virginia courts, seeks a certificate of appealability and an appeal from the district court's dismissal of his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Dubois' conviction and sentence were affirmed on direct appeal to the Virginia Supreme Court on September 17, 1993. Dubois v. Commonwealth, 246 Va. 260 (1993), cert. denied, 511 U.S. 1012 (1994). Dubois then filed a petition for state habeas corpus relief, which was denied by the Virginia Supreme Court on March 15, 1996. J.A. at 279. On January 2, 1997, Dubois filed the instant federal habeas corpus petition and on June 30, 1997, the district court dismissed Dubois' petition. J.A. at 447. For the reasons that follow, we deny Dubois' application for a certificate of appealability and dismiss this appeal.

I.

The facts of this case have been adequately summarized by the Virginia Supreme Court:

> On November 20, 1991, Dubois and three other men entered a convenience store in Portsmouth. Three store employees were in the store. Shari Watson was working near the rear of the store. Philip C. Council and Angela Garcia were working as cashiers in the front. As Dubois and his

2

companions entered the store, Dubois, the only man armed with a gun, fired in Watson's direction, barely missing her head.

One of the men ordered Garcia and Council to open the cash registers. When Council, frightened and suffering from mental and neurological difficulties stemming from an automobile accident, could not open the register quickly, three of the robbers jumped over the counter and began to beat him. Dubois then shot Council in the chest at point blank range. The register was opened and Dubois took approximately $400 in cash and fled with his accomplices. Council died from the gunshot wound. . . .

Dubois was indicted on charges of capital murder, robbery, use of a firearm while committing capital murder, use of a firearm while committing a robbery, attempted murder, and use of a firearm while attempting to commit murder. Dubois entered into a plea agreement with the Commonwealth. Under its terms, Dubois agreed to plead guilty to all charges and to cooperate fully in the prosecution of his co-defendants' cases. In exchange, the Commonwealth agreed not to seek the death penalty in his case.

At his arraignment on August 4, 1992, Dubois, represented by counsel, entered guilty pleas to all the charges, including the capital murder count. At the hearing, Dubois, under oath and in response to the trial judge's questions, stated that he understood the charges against him, the plea agreement and the possible consequences of his pleas. Dubois also stated that he understood that the maximum sentence for the capital murder was death and that the trial court was not bound by the plea agreement and could impose a death sentence.

After the Commonwealth summarized the evidence it would have presented at trial, Dubois reaffirmed his guilty pleas. The court found that Dubois had entered the pleas knowingly, intelligently, and voluntarily and that the evi-

3

dence supported those pleas of guilty. The court then ordered a presentence report.

At the sentencing hearing, Dubois stated that he had read and understood the presentence report. In response to the court's inquiries, Dubois indicated that he did not wish to question the probation officer who prepared the report nor did he wish to present any mitigating evidence. The court proceeded to hear argument from counsel. Dubois's counsel argued that the court should not impose the death penalty because the record before the court did not support imposition of the death penalty, that Dubois had expressed remorse, and that he had cooperated with the police as required under the plea agreement. The Commonwealth acknowledged that, pursuant to the terms of the plea agreement, it was not asking for the death penalty, but urged the court to impose the maximum sentence possible consistent with the agreement.

The trial court, after considering the record before it, sentenced Dubois to death for the capital murder of Philip Council. The judge found that Dubois presented a continuing serious future threat to society.

Dubois v. Commonwealth, 246 Va. 260, 262-63 (1993) (citations omitted).

II.

In the instant petition for federal habeas relief, Dubois raises the following claims:

> I. The trial court denied Mr. Dubois due process of law by imposing an illegal sentence not authorized by Virginia law in violation of Mr. Dubois' constitutional rights.
>
> II. The plea agreement was dispositional in nature and the trial court was without jurisdiction to enter a death sentence.

4

III. Mr. Dubois was denied effective assistance of counsel and due process of law by the lack of notice that the death penalty was at issue, after the prosecution had formally notified the defense and the court that it would not seek a death sentence and would not prove any statutory aggravating circumstances at the sentencing hearing, in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

A. A capital defendant is entitled to the due process of law at the sentencing hearing, which includes the effective assistance of counsel and notice of the matter at issue.

B. Mr. Dubois had neither actual nor constructive notice that the death sentence could be imposed after the commonwealth formally abandoned any attempt to obtain the death sentence.

IV. The trial court failed to put Mr. Dubois on notice that he would have to rebut evidence of future dangerousness and failed to put him on notice that it would consider information unknown to him and for which he was unprepared at the sentencing hearing, in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

V. Mr. Dubois' guilty pleas were not voluntary, knowing, and intelligent in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and section 1, 8, 9, and 11 of Article One of the Virginia Constitution.

VI. The trial court improperly requested and relied upon victim impact statements in imposing sentence on Mr. Dubois.

VII. The trial court erred in requesting and considering a presentence report in violation of Va. Sup. Ct. R. 3A:8(C)(2).

VIII. The trial court erred in accepting and entering Mr. Dubois' guilty pleas before determining whether to accept the plea agreement.

IX. Trial counsel failed to provide Mr. Dubois with reasonable and effective assistance of counsel and denied Mr. Dubois his right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

A. Trial counsel failed to assert the trial court's lack of jurisdiction to sentence Mr. Dubois to death and failed to object to the trial court's assumption of prosecutorial functions.

B. Trial counsel failed to request that the trial court sentence Mr. Dubois separately for his capital and non-capital offenses.

i. Trial counsel failed to move to recuse the judge after he presided over the case of Mr. Dubois' co-defendants Garrett Porter and Johnson Ruffin.

C. Trial counsel failed to request an order either specifying aggravating circumstances to be considered or limiting issues to be tried at the sentencing hearing.

D. Trial counsel failed to perform a reasonable and adequate investigation of the case.

i. Trial counsel failed to make a complete and proper discovery request.

6

ii. Trial counsel failed to corroborate and negotiate an accurate summary of the evidence before agreeing to allow the commonwealth to summarize the evidence to the trial court.

iii. Trial counsel failed to object to the prosecutor's inaccurate summary of facts at the guilt hearing.

iv. Trial counsel failed to adequately investigate the case at guilt and at sentencing, making their communications with and supervision of the expert appointed to assist the defense inadequate and meaningless.

v. Trial counsel failed to reasonably and adequately investigate the accuracy or sufficiency of information contained in the presentence report.

vi. Trial counsel failed to investigate and corroborate information contained in the victim impact statements and failed to object to the trial court's improper consideration of these statements and the improper information included in the statements.

vii. Trial counsel failed to investigate, develop, and present evidence to rebut the [sic] statutory aggravating circumstances.

viii. Trial counsel failed to investigate or present any mitigating evidence on behalf of Mr. Dubois.

E. Trial counsel failed to object to the trial court's improper request for victim impact statements.

F. Trial counsel failed to object to the trial court's improper request for a presentence report.

7

G. Trial counsel failed to object to the trial court's failure to follow the procedure mandated regarding plea agreements.

H. Trial counsel failed to object to the trial court's consideration of extra-judicial evidence in sentencing Mr. Dubois.

I. Trial counsel failed to object when the prosecutor breached the plea agreement by arguing for a death sentence.

J. Trial counsel failed to object when the trial court violated the plea agreement.

K. Trial counsel failed to move to withdraw Mr. Dubois' guilty pleas after the trial court improperly requested and considered the presentence report and victim impact statements.

L. Trial counsel failed to withdraw Mr. Dubois' guilty pleas after the prosecutor breached the terms of the plea agreement.

M. Trial counsel failed to request that the trial court rule on Mr. Dubois' motions and to renew ignored motions.

N. Trial counsel failed to safeguard Mr. Dubois' constitutional rights against self-incrimination when cooperating with the probation officer preparing the presentence report.

O. Trial counsel unreasonably and improperly introduced privileged and confidential evidence damaging to Mr. Dubois.

P. Trial counsel failed to object to the trial court's incorrect statements to Mr. Dubois regarding his rights on appeal.

Q. Trial counsel failed to request the opportunity to present evidence on Mr. Dubois' parole eligibility.

R. Trial counsel failed to provide effective assistance on appeal.

S. Trial counsel's errors individually and collectively prejudiced Mr. Dubois and deprived him of the effective assistance of counsel.

X. The trial court failed to preserve crucial evidence needed as part of the record on appeal in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

XI. The prosecutor engaged in substantial misconduct by violating his agreement not to seek the death penalty in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9 and 11 of Article One of the Virginia Constitution.

XII. The Commonwealth's attorney engaged in misconduct when he failed to reveal information to the defense in violation of Brady v. Maryland and Napue v. Illinois, in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

XIII. The trial court erred in incorrectly advising Mr. Dubois that if he pleaded guilty, he had no right to appeal the trial court's decision in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

XIV. The trial court erred in making a finding of future dangerousness beyond a reasonable doubt when there was insufficient evidence to support such a finding in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

XV. The Virginia Supreme Court failed to conduct constitutionally adequate proportionality review and other appellate review in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

XVI. The court-appointed psychologist did not perform an adequate evaluation of Mr. Dubois in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

XVII. The trial court erred in relying upon the results of the forensic evaluation to make a finding of future dangerousness in violation of Mr. Dubois' rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and sections 1, 8, 9, and 11 of Article One of the Virginia Constitution.

J.A. 320-26 (Dubois' petition for federal habeas corpus relief filed in district court).

III.

During state post-conviction proceedings, the Virginia Supreme Court held Claims II, IV, VI, VII, VIII, X, XI, XII, XIII, XIV, XV, XVI, XVII to be procedurally barred under the state procedural rule

of <u>Slayton</u> v. <u>Parrigan</u>, 215 Va. 27 (1974), which prevents a state <u>habeas</u> petitioner from raising claims that could have been but were not raised and adjudicated during the petitioner's trial or upon direct appeal. The Virginia Supreme Court also held Claims IX(B), IX(D)(i)-(iii), IX(M), IX(O)-(P) to be procedurally barred under the state procedural rule of <u>Anderson</u> v. <u>Warden</u>, 222 Va. 511 (1981), which prevents a state <u>habeas</u> petitioner from challenging the truth and accuracy of representations made by him as to the adequacy of his court-appointed counsel and the voluntariness of his guilty plea unless the prisoner offers a valid reason why he should be permitted to controvert his prior statements. J.A. at 279. The rule of <u>Slayton</u> is a valid procedural rule. <u>Smith</u> v. <u>Murray</u>, 477 U.S. 527, 533-39 (1986); <u>Turner</u> v. <u>Williams</u>, 35 F.3d 872, 890 (4th Cir. 1994). So, too, is the <u>Anderson</u> rule.**1** Accordingly, these above-referenced claims are procedurally defaulted for the purposes of federal <u>habeas</u> review.

Neither has Dubois carried his burden of establishing the requisite "cause" and "actual prejudice" necessary to excuse these procedural defaults. In his brief, Dubois asserts -- in one conclusory phrase and without citation to any authority, Appellant's Br. at 18 -- that his procedural defaults are excused under the "cause" and "actual prejudice" standard. First, with respect to Claims II, VI, VII, VIII, XI, and XIII,

_____

**1** We are not persuaded by petitioner's argument that the rule of <u>Anderson</u> was overruled by <u>United States</u> v. <u>Cronic</u>, 466 U.S. 648 (1984), and <u>Strickland</u> v. <u>Washington</u>, 446 U.S. 668 (1984). Although these cases, and <u>Cronic</u> in particular, suggest that in determining whether counsel's performance was constitutionally ineffective, a federal court entertaining such a claim "attach[es] no weight to either [the defendant's] expression of satisfaction with counsel's performance at the time of his trial, or to his later expression of dissatisfaction," 466 U.S. at 657 n.21, the <u>Anderson</u> rule is a procedural rule holding that a prisoner raising a state habeas petition is not permitted to present a set of facts directly contrary to his earlier statements made in open court. To the extent that <u>Strickland</u> and <u>Cronic</u> define the substantive standards for reviewing ineffective assistance of counsel claims under the Sixth Amendment, they do not foreclose Virginia from enforcing a procedural rule such as <u>Anderson</u>. Furthermore, we have reviewed these claims and have concluded that they do not justify issuance of the writ under the <u>Strickland</u> standard even if they were not defaulted under an adequate and independent state procedural rule. <u>See also</u> Part IV, <u>infra</u>.

11

Dubois would presumably assert -- although he has not framed any argument as such -- that he has demonstrated "cause" to excuse these procedural defaults because he has also alleged elsewhere that his failure to raise these claims in state court was the result of ineffective assistance of counsel. As we discuss infra, Dubois does not establish that his failure to raise any of these claims resulted from constitutionally ineffective assistance of counsel, and therefore Dubois has not carried his burden of demonstrating "cause" for these procedural defaults. Murray v. Carrier, 477 U.S. 478 (1986).

Second, Dubois argues that his Slayton default of Claim XV -- the denial of constitutionally adequate proportionality review -- is excused because he was unable to raise this claim until after the Virginia Supreme Court conducted such review and subsequently affirmed his sentence on direct review. To the extent that Claim XV raises a facial challenge to all proportionality review in Virginia, however, such a claim clearly could have been raised during Dubois' first appeal on direct review and prior to the Virginia Supreme Court's proportionality review of his sentence. And to the extent that Claim XV raises an as applied challenge to the proportionality review that Dubois received by the Virginia Supreme Court, Dubois could have raised that claim in a rehearing petition in his direct review to the Virginia Supreme Court. And, in any event, we have examined the proportionality review conducted by the Virginia Supreme Court, see Dubois, 246 Va. at 267-68, and we cannot conclude that Dubois has been denied any federal constitutional right to adequate and meaningful proportionality review.

Third, Dubois contends that several other of his defaults were the result of prosecutorial or trial court misconduct-- presumably Claims IV, X, and XII -- although Dubois does not specifically refer to any claims in this regard. None of these claims, however, allege any intentional or deliberate misconduct by the trial court or prosecution designed to prevent the timely raising of a claim of the type necessary to establish "cause" for a procedural default under Amadeo v. Zant, 486 U.S. 214 (1988), and related cases.

Finally, even if Dubois could demonstrate "cause" for his failure to properly raise any of these claims in state court, he has not demonstrated the requisite "actual prejudice" necessary to excuse any of

12

these procedural defaults. Other than one oblique-yet-conclusory assertion, see Appellant's Br. at 18 (under "non-opt-int law[ ] the district court erred in identifying certain claims as defaulted"), Dubois has not argued to this Court that he has been actually prejudiced by his failure to raise any of these defaulted claims in state court under proper procedural rules,[2] and we conclude from our review of the allegations raised in Dubois' habeas petition that Dubois has not carried his burden of demonstrating "actual prejudice" to excuse any of these procedural defaults.

Accordingly, Dubois' claims II, IV, VI, VII, VIII, IX(B), IX(D)(i)-(iii), IX(M), IX(O)-(P), X, XI, XII, XIII, XIV, XV, XVI, and XVII are all not cognizable for the purposes of the instant federal habeas petition.[3]

IV.

As Dubois' federal habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, 110

_____

[2] Dubois does argue that under the "opt-in" procedural default provisions, 28 U.S.C. § 2264, his procedural defaults are excused. Appellant's Br. 14-20. However, none of Dubois' arguments in this regard excuse his procedural defaults when analyzed under non-opt-in procedural default standards, particularly because Dubois' primary argument in his brief is that 28 U.S.C. § 2264 enhanced a habeas petitioner's ability to have procedural defaults excused by, inter alia, eliminating the need to show actual prejudice. Appellant's Br. at 16 ("Congress eliminated the additional threshold need to show prejudice" under the "opt-in" provisions of section 2264 and thus created a "less draconian version of the rule [of procedural default] than that which had evolved in the case law since 1979").

[3] The district court concluded that Virginia was an "opt in" state and therefore applied the new procedural default standards set forth at 28 U.S.C. § 2264 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214. Because we conclude that several of Dubois' claims are procedurally defaulted under the pre-AEDPA law, we do not reach the issue of whether Virginia qualifies as an "opt in" state within the meaning of section 107 of the AEDPA. To the extent that the district court held that Virginia qualifies as an "opt in" state, we vacate that portion of the district court's judgment.

13

Stat. 1214 (AEDPA), the AEDPA's amendments to chapter 153 of Title 28 apply to Dubois' claims. Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997); Breard v. Pruett, 134 F.3d 615, 618 (1998). Dubois brought the instant petition for relief pursuant to 28 U.S.C. § 2254(a). Section 2254(d) of that title, as amended by the AEDPA, now provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Accordingly, we review federal claims adjudicated on the merits in state court under the standard of review set forth in amended section 2254(d).

Dubois claims that he was denied due process of law when the Virginia courts imposed a death sentence in violation of Virginia law (Claim I). The gravamen of this claim is that "the trial court had neither the authority nor the power to impose the penalty of death unless the Commonwealth first proved at the sentencing hearing beyond a reasonable doubt at least one of two statutorily defined aggravating circumstances," and that "[t]he trial court could not properly find an aggravating circumstance to exist beyond a reasonable doubt because the Commonwealth failed to take any action to meet its burden of proof." J.A. at 339-40 (Dubois' federal habeas petition). To the extent that this claim alleges only a violation of state law, Dubois is not entitled to relief. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 73 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Furthermore, the Virginia Supreme Court has essentially rejected this claim and concluded that the evidence in the record supported the trial court's finding of aggravating circumstances, Dubois, 246 Va. at 263-

14

67, and Dubois has not carried his burden of disproving that determination. To the extent that this claim alleges a violation of the Due Process Clause or any other federal right, Dubois does not appear to have raised this precise claim in state court -- a failure which forecloses our ability to award habeas relief based upon this non-exhausted claim, see 28 U.S.C. § 2254(b)(1)-- and in any event Dubois has not cited to any Supreme Court (or other applicable) precedent to which the Virginia Supreme Court's adjudication of this claim is contrary or an unreasonable application. See 28 U.S.C.§ 2254(d)(1).

Dubois next claims that the trial court was without jurisdiction to enter a death sentence because his plea agreement with the Commonwealth was dispositional and was therefore valid only in the event that Dubois did not receive the death penalty (Claim II). As discussed supra, this claim is procedurally defaulted. This claim also raises only a question of state law and is therefore not cognizable on federal habeas. Moreover, the Virginia Supreme Court on direct appeal from Dubois' conviction and sentence concluded that the plea agreement here did not foreclose imposition of the death penalty, and we agree with the Virginia Supreme Court's interpretation of Virginia law. See, e.g., Dubois, 246 Va. at 265 ("there is no dispute that the trial court was in no way bound to accept the Commonwealth's recommendation. Rule 3A:8; Johnson v. Commonwealth , 214 Va. 515 (1974)"). This construction of the plea agreement is also consistent with the behavior of Dubois' trial counsel, J.A. at 33 (letter from attorney to Dubois), as well as Dubois' conduct, J.A. at 12-17, both of which indicate that Dubois pled guilty pursuant to the plea agreement with the knowledge that the agreement only limited the prosecution's ability to argue in favor of the death penalty but that it did not prevent the trial court from imposing the death penalty. This claim is therefore without merit.

Dubois next claims that he was denied several constitutional rights because he had no notice that the death penalty would be an issue during proceedings in the trial court (Claim III). The record, however, clearly establishes that the court questioned Dubois and that Dubois knew (or, at the very least, was on notice) at the time of his guilty plea that he could receive the death penalty notwithstanding the plea agreement. For example, the following colloquy occurred between Dubois and the trial court:

15

Court: Do you understand, with respect to this negotiated plea agreement, the Court is not bound by anything you, your attorneys and the Commonwealth Attorney's Office have agreed to?

Dubois: Yes.

Court: Do you further understand, notwithstanding what that agreement may be, if it calls for a recommendation, I have the power and authority to reject that recommendation?

Dubois: Yes.

Court: If it calls for a recommendation, and I reject it, you have no right to withdraw your pleas of guilty?

Dubois: Yes.

Court: Do you understand further, if I reject it, I also have the power to sentence you to a term greater than they may be recommending?

Dubois: Yes. . . .

Court: What is the maximum punishment for capital murder?

Dubois: The death penalty.

Court: What is the maximum punishment for robbery?

Dubois: Life. . . .

Court: You understand that the maximum punishment for capital murder being sentenced to die in the electric chair, do you still desire to enter your pleas of guilty and enter into that negotiated plea agreement?

Dubois: Yes.

16

J.A. at 14-17. The Virginia Supreme Court also found that Dubois acknowledged that the trial court was not bound by the plea agreement, Dubois, 246 Va. at 262, and counsel for Dubois also indicated this understanding. See, e.g., J.A. at 54. Accordingly, Dubois was on notice that he could receive the death penalty, and Dubois is not entitled to habeas relief based upon this claim.

We also reject Dubois claim that his guilty plea was not voluntary, knowing and intelligent (Claim V). As discussed supra, Dubois explicitly acknowledged in open court that he could receive the death penalty notwithstanding his plea agreement. J.A. at 11-18. The trial court also asked Dubois about his education level (one year of college), whether he understood the nature of the charges against him, discussed the elements of the crimes with his attorneys, received advice from his attorneys regarding those elements, had enough time to discuss possible defenses, and entered his guilty pleas of his own free will and without coercion. Dubois answered affirmatively to these five questions, J.A. at 12-13, and then the trial court specifically found that Dubois' plea was knowingly and voluntarily entered. J.A. at 27. Dubois has not carried his burden of disproving this finding, and neither has he otherwise demonstrated that his guilty plea was not knowing, intelligent, and voluntary. We therefore reject this claim.

Dubois next claims that the trial court erred in making a finding of future dangerousness beyond a reasonable doubt (Claim XIV). Again, to the extent that this claim alleges a violation of state law only, it is not cognizable here. Also, the Virginia Supreme Court affirmed the trial court's finding of future dangerousness, and the facts in the record are clearly sufficient to support that finding of future dangerousness. See Dubois, 245 Va. at 264-65 (discussion of all the evidence, including the murder of Council, Dubois' prior criminal record for other crimes of violence, his several arrests for assault, robbery, and armed robbery, his admissions of involvement in an attempted murder in Boston, his drug dealing, and general reports of his antisocial personality and excitability). We therefore reject this claim, as well.

In his next claim, Dubois argues that, under Virginia law, he is entitled to proportionality review, that the Virginia Supreme Court's failure to perform "meaningful" proportionality review deprived him

17

of this statutory right in violation of the Due Process Clause, and that proportionality review is otherwise constitutionally required in his case (Claim XV). First, and as discussed above, this claim is procedurally defaulted. Second, Dubois cites to no Supreme Court case that there is a constitutional right to such proportionality review, and no case that "meaningful proportionality review" is the type of state-created right whose deprivation violates due process. Cf. Pulley v. Harris, 465 U.S. 37, 42-51 (1984) (holding no constitutional right to proportionality review). Third, the Virginia Supreme Court in this case conducted a thorough and adequate proportionality review under its procedures, see Dubois, 246 Va. 267-68, and after reviewing Dubois' allegations we cannot conclude that the state deviated from its statutory duty to conduct proportionality review (if at all) so egregiously as to violate Dubois' federal constitutional rights. We accordingly conclude that this claim is without merit.

Finally, Dubois raises a number of claims of ineffective assistance of counsel. (Claims III, and IX(A)-(S)). Although in the district court below, Dubois raised twenty six different claims and sub-claims of ineffective assistance, on appeal Dubois has in effect only briefed one ineffective assistance claim -- a new claim which is different from the claims raised below. In this new claim, which is undoubtedly waived for the purposes of this appeal, Dubois contends that his trial counsel incorrectly advised him that under the terms of the plea agreement he would be ineligible to receive the death penalty whereas in actuality the trial court was free to impose the death penalty under the agreement. Even if this contention were not waived, Dubois has not carried his burden of proving the elements of this claim because all of the record evidence to which Dubois cites-- particularly the letters from attorneys to Dubois -- unequivocally establishes that Dubois' counsel only advised Dubois that under the plea agreement the Commonwealth would not seek the death penalty in exchange for Dubois' cooperation, not that Dubois would be immune from receiving the death penalty. J.A. 33, 34, 40, 41. This understanding of the plea agreement is further confirmed by Dubois' statements at his arraignment where he acknowledged that the trial court was free to impose the death penalty notwithstanding the plea agreement. Furthermore, Dubois' contention that his attorneys falsely informed him that under Virginia law he would be ineligible for the death penalty under the plea agreement is inconsistent with his other contentions

18

that the trial court violated Virginia law by sentencing Dubois to death notwithstanding the plea. Therefore, Dubois has not proven the necessary predicate for this certainly-waived claim; Dubois has not proven that his trial counsel advised him that he would be legally immune from the death penalty under the terms of his negotiated plea agreement.**4**

Dubois does not brief any of his remaining twenty five ineffective assistance claims other than to provide a conclusory laundry list of the titles of each of these claims and to assert that he is therefore entitled to relief. See Appellant's Br. at 35-39. As discussed supra, several of these claims are procedurally defaulted and not cognizable on federal habeas review. We seriously doubt that Dubois has even properly presented the remaining claims to this court given the superficiality with which they have been treated and briefed by habeas counsel. However, even assuming (counterfactually) that Dubois has properly raised these claims of ineffective assistance of counsel that have been rejected on the merits by the Virginia Supreme Court, we are unable to conclude, after our review of the briefs, the record, the submissions below, and after having had the benefit of oral argument, that the Virginia Supreme Court's rejection of any of these claims -- either individually or collectively -- was contrary to or an unreasonable application of the very stringent standards established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), Hill v. Lockhart, 474 U.S. 52 (1985), Evitts v. Lucey, 469 U.S. 387 (1985).

Dubois has therefore failed to make a "substantial showing of the

_____

**4** To the extent that Dubois may argue that his trial counsel correctly advised him of the legal consequences of the plea agreement but were nonetheless ineffective for advising him to accept the plea, we cannot conclude that an attorney's recommendation that his client accept such an agreement falls below the range of objectively competent legal advice under Strickland. For, even though the agreement did not guarantee that Dubois would avoid the death penalty, it nevertheless prevented the Commonwealth from arguing in favor of death, and the agreement would naturally reduce the chances of someone in Dubois' position receiving the death penalty. Dubois' trial counsel therefore acted within the range of professionally and constitutionally conduct as defined by the Supreme Court in Strickland and related cases.

19

denial of a constitutional right," 28 U.S.C.§ 2253(c)(2), and accordingly we deny Dubois' application for a certificate of appealability and dismiss this appeal.

DISMISSED