Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and
Agee, JJ., and Carrico, S.J.

JAMES BRYANT HUDSON

v.  Record No. 031461    OPINION BY JUSTICE ELIZABETH B. LACY
                                        January 16, 2004
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Leslie M. Osborn, Judge

James Bryant Hudson received a death sentence upon
pleading guilty to a charge of capital murder for the
"willful, deliberate, and premeditated killing of more than
one person as a part of the same act or transaction."  Code
§ 18.2-31(7).  Although Hudson waived his right to appeal,
Code § 17.1-313 requires that we review the imposition of the
death sentence to determine whether the death sentence "was
imposed under the influence of passion, prejudice or any other
arbitrary factor" and whether the death sentence is "excessive
or disproportionate to the penalty imposed in similar cases,
considering both the crime and the defendant."

                         Background

Pursuant to established principles of appellate review,
we recite the facts in the light most favorable to the
Commonwealth, the party prevailing below.  Commonwealth v.
Bower, 264 Va. 41, 43, 563 S.E.2d 736, 737 (2002).

A single driveway connected Hudson's home and the home of
Linda and Walter Stanley Cole to State Route 658, known as

Virgie Cole Road.  On July 3, 2002, Stanley and his brother, Thomas Wesley Cole, were riding in a truck on the driveway towards Hudson's home when they encountered Hudson's vehicle stopped in the middle of the driveway facing them.  Wesley, the driver, stopped the truck and got out.  Hudson and Wesley stood at the driver's side of the truck and talked for a few minutes.  Wesley then got back into the truck and began driving down the road, when according to an eyewitness, Hudson took a 12-gauge shotgun from his vehicle.  Then, the eyewitness heard Wesley ask "Why do you shoot . . . why do you shoot us," as Hudson fired the shotgun through the front windshield of Wesley's truck.  The eyewitness heard more shots as he ran to get help.

A neighbor then saw Hudson drive around the front of the Coles' home and stop in the driveway beside the garden where Patsy A. Cole, Wesley's wife, was working.  The neighbor saw Hudson get out of his truck, take a shotgun from the back of his truck, and raise the gun.  Patsy Cole, seeing Hudson, asked "What are you doing?"  Hudson shot her, climbed back into his truck, and drove away.

After the shootings, Hudson returned to his home where he parked the truck, got more ammunition, and left in another truck.  Hudson telephoned his sister-in-law and stated that "he had done some shooting."

When police officers arrived in response to a call from the Coles' neighbor, they found Patsy Cole's body and subsequently discovered the bodies of Stanley and Wesley Cole. Patsy died from a hemorrhage caused by a shot that penetrated the vital organs of her chest and abdomen.

Stanley Cole's body was found in the passenger's side of the truck slumped over towards the middle of the cab. Stanley had sustained multiple pellet wounds to his head and neck and a fatal shotgun wound behind the left ear measuring approximately two and one half inches wide. Two expended 12-gauge shotgun shells were found on the driveway near the driver's side door of Wesley Cole's truck. There were shotgun blasts to the center, front windshield, rear windshield, and passenger door of the truck.

Wesley's body was found lying in a ditch approximately five yards from the rear of the truck. He apparently suffered a nonfatal gunshot wound to his right arm inside the truck before fleeing the truck in an attempt to escape. Wesley sustained a fatal gunshot wound to the head.

The Halifax County Sheriff's office obtained warrants for Hudson's arrest that afternoon and apprehended Hudson the next day without incident. At the time of the arrest, Hudson had a 12-gauge semi-automatic shotgun and a pistol in his truck.

3

Subsequent analysis determined that Hudson had used that shotgun and "Number 00 Buck" pellets to kill the Coles.

Proceedings

In September 2002, a grand jury indicted Hudson for the capital murder of Stanley Cole and Wesley Cole, the capital murder of Wesley Cole and Patsy Cole, and the capital murder of Stanley Cole and Patsy Cole in violation of Code § 18.2-31(7) (the "willful, deliberate, and premeditated killing of more than one person as a part of the same act or transaction").  Hudson was also indicted for the first-degree murders of Stanley Cole, Wesley Cole, and Patsy Cole, Code § 18.2-32, and six counts of unlawfully and feloniously using a firearm in the commission of a felony, Code § 18.2-53.

Pursuant to a plea agreement, Hudson pled guilty to the capital murder of Stanley Cole and Wesley Cole, the first-degree murder of Patsy Cole, and two counts of unlawfully and feloniously using a firearm in the commission of a felony, and the Commonwealth agreed to nolle prosequi the remaining charges.  After determining that Hudson's pleas of guilty were freely, intelligently, and voluntarily made, the trial court accepted the guilty pleas.

At the sentencing hearing, the Commonwealth sought the death penalty based on the aggravating factors of vileness and future dangerousness.  The Commonwealth presented the

4

presentence report, victim impact statements, the testimony of Hudson's brother, and the testimony of various persons affected by the loss of the Coles. Hudson refused to present mitigating evidence and instructed his attorney not to do so. The trial court found that the evidence in this case supported a finding of both vileness and future dangerousness. Based upon this finding, the trial court imposed the penalty of death because Hudson had a history of "significant criminal activity;" showed no evidence of extreme mental or emotional disturbance, lack of mental capacity, or history of mental retardation; and had engaged in deliberate, execution-style murders that were "cold-blooded, pitiless, [and] senseless slayings." The trial court also commented that Hudson showed no remorse, justification, or motive for killing innocent people.

On May 12, 2003, Hudson signed a waiver of his right to appeal his death sentence. On that same date, the trial court conducted an evidentiary hearing to determine whether Hudson's waiver of his right to appeal was proper. The court entered an order on May 19, 2003 based upon a finding that Hudson knowingly, voluntarily, and intelligently waived his right to appeal.

Discussion

A defendant may voluntarily waive his right to appeal a sentence of death and instruct his attorney to refrain from seeking a commutation of that sentence. A defendant cannot, however, waive a review of the death sentence pursuant to Code § 17.1-313(A) and (C) because "the purpose of the review process is to assure the fair and proper application of the death penalty statutes in this Commonwealth and to instill public confidence in the administration of justice." Akers v. Commonwealth, 260 Va. 358, 364, 535 S.E.2d 674, 677 (2000).

Accordingly, we review Hudson's death sentence to determine whether the trial court imposed that sentence "under the influence of passion, prejudice or any other arbitrary factor" and whether the sentence "is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Code § 17.1-313(C)(1)-(2).

First, we address whether the trial court imposed Hudson's death sentence "under the influence of passion, prejudice or any other arbitrary factor." Code § 17.1-313(C)(1). We find no evidence in the record indicating that the trial court ruled under such influences. We further observe that the trial court, although not mandated to do so, offered Hudson more than one opportunity to present mitigating

evidence at the sentencing hearing.  Hudson refused to present any such evidence.

Next, we consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.  Code § 17.1-313(C)(2).  This Court has accumulated the records of all capital murder cases where a defendant received a death sentence as well as those where a defendant received a life sentence.  Code § 17.1-313(E).

We have reviewed the capital murder cases where a defendant killed more than one person as part of the same act or transaction and where the Commonwealth sought the death penalty based upon the aggravating factors of vileness and future dangerousness.  After such review, we find that the defendant's sentence was not excessive or disproportionate to the sentences imposed in capital murder cases comparable to this case.  See Zirkle v. Commonwealth, 262 Va. 631, 553 S.E.2d 520 (2001) (defendant stabbed to death his daughter and his ex-girlfriend's daughter); Goins v. Commonwealth, 251 Va. 442, 470 S.E.2d 114 (1996) (defendant killed five people by shooting them multiple times with a pistol); Stewart v. Commonwealth, 245 Va. 222, 427 S.E.2d 394 (1993) (defendant shot his estranged wife and infant son in the head).

Hudson's counsel argues that the death penalty is disproportionate in this case because there is no evidence of prolonged suffering and, therefore, that the acts of murder were less heinous than other acts for which the death penalty was imposed.  We disagree.  Hudson committed unprovoked offenses using "Number 00 Buck" pellets to inflict the maximum damage on the three defenseless victims, showing his disregard for human life.  See Chichester v. Commonwealth, 248 Va. 311, 332, 448 S.E.2d 638, 652 (1994); see also Dubois v. Commonwealth, 246 Va. 260, 267, 435 S.E.2d 636, 640 (1993).  As the trial court noted in this case, Hudson committed three deliberate, execution-style murders that were "cold-blooded, pitiless, [and] senseless slayings."  In conducting the proportionality review, we strive "to reach a reasoned judgment regarding what cases justify the imposition of the death penalty.  Orbe v. Commonwealth, 258 Va. 390, 405, 519 S.E.2d 808, 817 (1999).  We do not 'insure complete symmetry.' Id."  Green v. Commonwealth, 266 Va. 81, 109, 580 S.E.2d 834, 850 (2003).

For the foregoing reasons, we will affirm the judgment of the trial court.

Affirmed.

8